NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| L.Y., on behalf of J.Y., : | |
| : | Civil Action No. 09-4422 (SRC) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| BAYONNE BOARD OF EDUCATION, : | |
| : | |
| Defendant. : | |

**CHESLER**, District Judge

      This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., and involves a dispute over the 2009-2010 Individualized Education Program ("IEP") developed for J.Y., the son of Plaintiff L.Y. ("Plaintiff" or "L.Y."). Plaintiff opened this matter by application for an order to show cause seeking a preliminary injunction that would declare J.Y.'s placement in the Community School, the school placement called for by the challenged 2009-2010 IEP, as his stay-put placement under the IDEA during the pendency of this dispute and order Defendant Bayonne Board of Education ("Defendant" or the "Bayonne School District") to effectuate that placement. On August 31, 2009, the Court issued an order to show cause directing Defendant to demonstrate why the preliminary injunction should not issue. The Court considered the papers submitted by the parties and held oral argument on the motion for a preliminary injunction on September 8, 2009.

      For the reasons that follow, the Court denies Plaintiff's motion for a preliminary injunction.

**I.      BACKGROUND**

This case varies from the ordinary IEP dispute under the IDEA in that it involves three interested parties: the student (and his parent), the charter school he attended and which was involved in creating the challenged IEP, and the school district which bears financial responsibility for implementation of the IEP.  J.Y. is a thirteen-year-old boy who resides in the City of Bayonne.  He has attended Elysian Charter School since 2002.  In 2002, Elysian Charter School's IEP team performed an evaluation of J.Y. and classified him as having learning disabilities requiring special instruction.  Beginning in 2002 and for school years thereafter, Elysian Charter School formulated IEPs for J.Y., which involved special education services provided at the school.  The IEP developed for J.Y.'s 2009-2010 school year, however, called for placement at the Community School, a private school for the disabled located outside of the Bayonne School District.  Under the IEP, the placement at the Community School is to begin in September 2009.  J.Y.'s mother, L.Y., approved of the 2009-2010 IEP and signed it on June 9, 2009.  For purposes of clarity, the Court will refer to this IEP as the "June 9, 2009 IEP" in this Opinion.

The Bayonne School District was not involved in the creation of the June 9, 2009 IEP. Rather, as required by law, Elysian Charter School notified the Bayonne School District of J.Y.'s placement in a private day setting.  Exercising its statutory right to contest the placement, the Bayonne School District initiated a due process hearing with the Department of Education, claiming that an in-district placement would provide J.Y. with a free and appropriate public education in the least restrictive environment as required by IDEA.  On or about August 6, 2009,

L.Y., on behalf of J.Y., cross-petitioned in the administrative process below for emergent relief seeking a stay-put order based on the June 9, 2009 IEP, placing J.Y. at the Community School during the pendency of the administrative process. On August 17, 2009, Administrative Law Judge Joann LaSala Candido denied L.Y.'s request for a stay-put placement at the Community School.

Thereafter, L.Y. initiated the instant IDEA action by filing a Verified Complaint with this Court on August 27, 2009. She claims that the Bayonne School District's refusal to implement the June 9, 2009 IEP violates her son's rights under the IDEA. This request for emergent injunctive relief was filed simultaneously.

## II.   DISCUSSION

The IDEA is the vehicle created by Congress to ensure that states follow a mandate to provide a "free and appropriate education" ("FAPE") to all disabled children. 20 U.S.C. §1412. "Educational instruction specially designed to meet the unique needs of the handicapped child," coupled with services "necessary to permit the child to 'benefit' from the instruction" constitute a FAPE. Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 756 (3d Cir. 1995). For each child identified as eligible for special education, a written statement called an IEP is developed. The IEP, which addresses and includes several elements as provided under 20 U.S.C. §1414(d)(1)(A), is designed to ensure implementation of a FAPE for the child. S.H. v. State-Operated Sch. Dist. of Newark,

336 F.3d 260, 264 (3d Cir. 2003).  The process of creating an IEP is the "central vehicle" for collaboration between the child's parents and his school to accomplish the goals of the IDEA. Shaffer v. Weast, 546 U.S. 49, 53 (2005).

In instances in which the child attends a charter school, as in this case, it is the charter school that is responsible for providing special education services to disabled students, including working with a child's parents to develop an IEP.  N.J.S.A. 18A:36A-11(b).  Though a charter school is a public school, it is operated independently of a local board of education.  N.J.S.A. 18A:36A-3.  The school district where the child resides, however, bears fiscal responsibility for a child's special education services where the IEP developed by the charter school and the child's parents requires placement at a private day or residential school.  N.J.S.A. 18A:36A-11(b). Though the statute imposing such fiscal responsibility on the school district of residence does not affirmatively give the school district the right to participate in the creation of a charter school student's IEP, it does offer the resident school district an opportunity to challenge the IEP agreed-to by the charter school and the parents.  Id.  Specifically, the statute provides:

> Within 15 days of the signing of the individualized education plan, a charter school shall provide notice to the resident district of any individualized education plan which results in a private day or residential placement. The resident district may challenge the placement within 30 days in accordance with the procedures established by law.

Id.  Though neither the statute itself nor the legislative history indicates what kind of procedures that challenge would entail, the parties to the case before the Court have agreed that the appropriate challenge would be a due process hearing pursuant to New Jersey regulations which permit a parent to challenge an IEP on the grounds that it fails to provide the child with a FAPE

as required by the IDEA.  In any event, that issue is not presently before the Court.

The issue before the Court is whether J.Y. is entitled to placement in the Community School during the pendency of any administrative or judicial proceedings disputing his June 9, 2009 IEP.  Plaintiff seeks this order directing the Bayonne School District to implement the Community School placement, even as it is challenged, under IDEA's "stay-put" provision.  The stay-put provision provides in relevant part that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j).  The relevant IDEA regulation, and its counterpart in the New Jersey Administrative Code, direct that a child remain in his or her current educational placement "during the pendency of any administrative or judicial proceeding regarding a due process complaint."  34 C.F.R. § 300.518(a); N.J.A.C. 6A:14-2.7(u). The stay-put provision functions as an automatic preliminary injunction which dispenses with the need for the Court to weigh such factors as irreparable harm and likelihood of success on the merits and removes the Court's discretion regarding whether an injunction should be ordered.  Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996).  Its purpose is to maintain the status quo for the child while the dispute over the IEP remains unresolved.  Ringwood Bd. of Educ. v. K.H.J., 469 F.Supp.2d 267, 270-71 (D.N.J. 2006).

The "relevant inquiry under [the IDEA's stay-put provision] is the identification of 'the then-current educational placement'" of the student with disabilities.  Drinker, 78 F.3d at 865 (concerning stay-put provision then-codified at 20 U.S.C. § 1415(e)(3)).  Our jurisprudence

defines the "then-current educational placement" as the IEP "actually functioning when the stay-put is invoked." Id. at 867.  Indeed, the Third Circuit has held that "the operative placement actually functioning at the time the dispute first arises" is the "dispositive factor" in deciding what a child's current educational placement is.  Id. (quoting Thomas v. Cincinnati Bd. of Educ., 918 F.2d 618, 625-26.)  It is generally the placement associated with the child's most recent IEP. Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir.1996).  Moreover, stressing that Congress intended to preserve the status quo while a child's placement or program was in dispute, the Third Circuit has held that if there is no IEP in effect when the dispute arises, the placement under which the child is actually receiving instruction will be the stay-put placement. Pardini v. Allegheny Intermediate Unit, 420 F.3d 181, 190-91 (3d Cir. 2005) (citing Thomas, 918 F.2d at 625-26).

This case presents a variation on the typical invocation of the stay-put provision. Typically, where it is invoked, a due process hearing has been initiated because the parent and the school cannot agree on an IEP.  In this case, the school and the parent agreed on an IEP on June 9, 2009, and the objection arises after the fact of a finalized IEP by virtue of the procedure created by N.J.S.A. 18A:36A-11(b), entitling the funding local board of education to challenge the private day placement agreed to by the charter school and parent.  When the instant dispute arose, that is, when the Bayonne School District initiated the due process challenge in July 2009, an executed IEP had already been achieved.

Based on this agreement between Elysian Charter School and L.Y., Plaintiff argues that J.Y.'s educational placement at the time the dispute arose was the placement called for by the

6

June 9, 2009 IEP. Plaintiff highlights that, by the terms of the June 9, 2009 IEP itself, it was to be implemented immediately upon signing. In other words, Plaintiff argues that the Community School placement called for by the immediately effective June 9, 2009 IEP was the "then-current educational placement" and must be honored as the stay-put placement pending the Bayonne School District's challenge. The Court rejects this argument as unsupported by Third Circuit law on what constitutes a "current educational placement." At the time the Bayonne School District initiated proceedings to contest the June 9, 2009 IEP, J.Y. was not receiving instruction under that IEP. He was not yet attending the Community School, and indeed, the very terms of the IEP did not call for that placement to begin until September 2009. A plan may have been executed, but the placement was not "actually functioning" at the time the dispute first arose." Drinker, 78 F.3d at 867. The Court also notes that the dispute arose in the summer months, when school was not in session. The school year at Elysian Charter School concluded on June 16, 2009, and the Community School session would not begin until September 9, 2009. Thus, when the Bayonne School District initiated the challenge to the June 9, 2009 IEP, J.Y. was not receiving instruction under either the most recent un-challenged IEP, for the 2008-2009 school year, or the June 9, 2009 IEP. However, to find that the not-yet commenced placement at the Community School is J.Y.'s stay-put placement would not further the purpose of the IDEA's stay-put provision: to preserve the status quo in child's educational setting and program while a dispute over those matters is underway. Id. at 865. Plaintiff's characterization of the Community School placement set by the June 9, 2009 IEP as the operative or "then current educational placement" of J.Y. merely because the IEP developed by Elysian Charter School had been signed by J.Y.'s mother elevates form over substance and contravenes the Third Circuit's view on the purpose of a stay-

put placement. In this case, with the dispute over the June 9, 2009 IEP arising when J.Y.'s instruction at Elysian Charter School, under the most recent un-challenged IEP, was on recess for the summer and his attendance at the Community School, under the June 9, 2009 IEP, had not yet begun, the Court appropriately looks to the most recent actually functioning placement as the J.Y.'s pendency or stay-put placement.

Alternatively, Plaintiff argues that even if the Court were to find that the Community School placement was not J.Y.'s "then current" placement at the time the dispute arose, the stay-put provision empowers the school and child's parents to agree on the appropriate placement while an IEP dispute is pending. L.Y. points to the language directing that a child remain in his or her then-current placement "unless the State or local educational agency and the parents otherwise agree." 20 U.S.C. § 1415(j). Application of that provision here is complicated by the fact that implementation of J.Y.'s IEP is not a bilateral issue. First, the parties take different positions on which entity is the "local educational agency;" L.Y. urges that it is Elysian Charter School, under the IDEA definition of the term, whereas the Bayonne School District asserts that under the IDEA and New Jersey regulations it remains the local educational agency. Compare 20 U.S.C. § 1401(19) (defining term as "a public board of education or other public authority legally constituted within a State for either administrative control or direction of" the public elementary and secondary schools) with N.J.A.C. 6A:11-4.1 (stating that a charter school may serve as a local education agency only for the purpose of applying for federal funds). Second, they disagree as to the impact of the New Jersey statute giving the resident school district the right to challenge a private school placement agreed to by a charter school and a child who resides in the district. See N.J.S.A. 18A:36A-11(b). Plaintiff stresses that the statute gives the resident school district

8

no role in the formulation of the IEP and thus should not, on the back-end, function to impede the IEP's implementation while the due process challenge brought by the Bayonne School District is pending. Defendant counters that allowing Elysian Charter School and L.Y. to designate a stay-put placement by consent would negate its right to challenge the placement under New Jersey law.

The Court agrees with this latter point raised by the Bayonne School District and will not order the Community School placement as J.Y.'s pendency placement based on agreement between Elysian Charter School and L.Y. Regardless of whether the Bayonne School District or Elysian Charter School is the "local education agency" - and the Court makes no finding on that matter - IDEA's stay-put provision must be read together with the statutes enacted by the State of New Jersey. The stay-put provision seeks to preserve the status quo, that is, to have the child remain in his placement under the most recent unchallenged IEP. Normally, that is the last IEP agreed to by the IEP team at the school the child attends and the child's parents. Here, though such an agreement has been reached, the June 9, 2009 IEP is nevertheless in dispute. New Jersey imposes fiscal responsibility for the private school placement of a disabled student on that student's public school district of residence, even though the placement may have been chosen by the student's charter school IEP team. In 2008, the New Jersey Legislature amended the charter school law to give the resident school district a right to challenge the IEP, presumably in recognition of the local school district's involvement in the child's education once a private day setting is selected. Though neither the statute itself, its legislative history, nor any implementing regulations shed light on the impact of such a challenge on the IEP agreed to by the student and the charter school, the Court finds that the school district's right to pursue a due process

challenge to an IEP would be meaningless were the disputed IEP given immediate effect as a stay-put placement.  To allow a challenged IEP to operate as the pendency placement based on consent given by the very same parties that initially agreed to the challenged IEP would essentially render the 2008 amendment to the charter school law insignificant.  "It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous." United States v. Cooper, 396 F.3d 308, 312 (3d Cir. 2005) (citing TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.")). The Court will not construe the charter school statute in a manner that renders the placement challenge provision of N.J.S.A. 18A:36A-11(b) superfluous or insignificant.  The Court will therefore not hold that the challenged Community School placement constitutes J.Y.'s stay-put placement.

Finding that no injunction is warranted under the stay-put provision of the IDEA, the Court now turns to the traditional standard for a preliminary injunction, which has also been invoked by Plaintiff as a basis for relief.  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. NRDC, Inc., 129 S.Ct. 365, 374 (2008).  The Court finds that Plaintiff has failed to carry that burden.

The ultimate merits of this case concern whether the June 9, 2009 IEP will provide J.Y. with a FAPE in the "in the least restrictive environment that will provide [the student] with a meaningful educational benefit." S.H., 336 F.3d at 265. L.Y. asserts that the Community School placement would satisfy the IDEA's mandate whereas the programs available at and offered by the Bayonne School District would not meet J.Y.'s needs and therefore do not constitute a FAPE. Bayonne disputes this assertion. The Court is presented with competing certifications submitted by the parties. Whether the June 9, 2009 IEP would afford J.Y. a FAPE is a fact-intensive inquiry, and the Court cannot on this record conclude that L.Y. has demonstrated a likelihood of success on the merits.

Additionally, Plaintiff has not demonstrated that J.Y. will suffer irreparable harm if the injunction does not issue. Irreparable harm means that the harm of is not capable of remedy by money damages at a later date, in the ordinary course of litigation. Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989) (citing Sampson v. Murray, 415 U.S. 61, 90 (1964)). Even where the harm is substantial, the extraordinary remedy of a preliminary injunction is not justified unless the harm is irreparable. Id. The Supreme Court has stressed that a plaintiff seeking "preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter, 129 S.Ct. at 375 (emphasis in original). The mere possibility of irreparable harm does not suffice. Id. The Court's decision not to order placement, before the merits of the IEP dispute are evaluated, does not leave Plaintiff without an otherwise adequate remedy in the form of money damages. Plaintiff is free to send J.Y. to the Community School, at her own expense, and seek reimbursement of cost of obtaining educational services, should she prevail in her dispute with the Bayonne School District. Ridgewood Bd. of Educ. v. N.E., 172

F.3d 238, 248 (3d Cir. 1999). The Third Circuit has noted that under the IDEA, "[p]arents who believe that a public school is not providing an appropriate education may unilaterally remove the child from that school, place him/her in another school, and seek tuition reimbursement for the cost of the alternate placement." Lauren P. ex rel. David and Annmarie P. v. Wissahickon Sch. Dist., 310 F.App'x 552, 555 (3d Cir. 2009) (citing 20 U.S.C. § 1412(a)(10)(c) and Burlington Sch. Comm. v. Dep't of Educ., 471 U.S. 359, 374, (1985)). Alternatively, if J.Y. remains in the current Elysian Charter School placement and it is ultimately found that he has been deprived of a FAPE, Plaintiff may seek the relief in the form of compensatory education under the IDEA, a remedy which "is designed to require school districts to belatedly pay expenses that [they] should have paid all along." Mary T. v. School Dist. of Phila., 575 F.3d 235, 249 (2009) (internal quotations omitted). The availability of such remedies belies Plaintiff's argument that J.Y. will suffer irreparable harm if not immediately placed at the Community School because he will be deprived of a FAPE.

No preliminary injunction may issue where a plaintiff has failed to demonstrate likelihood of success on the merits and/or irreparable harm. Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d Cir.1990) (holding that the absence of both or either is fatal to a motion for preliminary injunction). Thus, the Court will refrain from examining the remaining prongs of the preliminary injunction standard. Plaintiff has failed to establish that the extraordinary and limited remedy of a preliminary injunction is warranted.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction will be denied. An appropriate form of order will be filed herewith.

                                         /s Stanley R. Chesler
                                         Stanley R. Chesler, U.S.D.J.

Dated: September 15, 2009